Richard Garbarini
GARBARINI FITZGERALD P.C.
211 East 43rd Street
7th Fl.
New York NY 10017
Phone: (212) 300-5358
Fax: (888) 265-7054

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

YESH MUSIC, LLC.,

                                 Plaintiff,

                      v.

SOUNDFILE PRODUCTIONS, INC. and
MICHAEL BAIARDI,

                               Defendants.

--------------------------------------------------------------x

Case No.: 19-cv-2062 (DLI)(SJB)

**ECF CASE**

**AMENDED COMPLAINT AND JURY DEMAND FOR DAMAGES FOR COPYRIGHT INFRINGEMENT**

      Plaintiff Yesh Music, LLC. ("YESH"), by and through the undersigned counsel, brings this Amended Complaint and Jury Demand against defendants Soundfile Productions, Inc. ("SOUNDFILE") and its owner Michael Baiardi ("BAIARDI") for damages based on: (i) contributory copyright infringement [Copyright Act, 17 U.S.C. §§ 101 et seq.], (ii) reverse passing off/passing off/false designation of origin [Lanham Act 15 U.S.C. § 1125; 43(a)]; (iii) violations of the Digital Millennium Copyright Act [DMCA -- 17 U.S.C. §§ 1201-03]; New York State law claims of: (iv) conversion; (v) money had and received; (vi) intentional misrepresentation; and (vii) breach of contract.  Plaintiff alleges below upon personal knowledge as to itself as to certain matters, and upon information and belief as to other matters as so indicated.

## NATURE OF THE ACTION

1.     Defendants, without authority or license from plaintiff, illegally claimed ownership on YouTube of at least fifty-three (53) copyrighted recordings (the "Copyrighted Recordings"), used in hundreds of videos, and collected all resulting revenue.  Due to defendants falsely claiming hundreds of videos on YouTube containing plaintiff's music, plaintiff lost all royalties, advertising payments, good-will, and down-stream purchases, licensing opportunities, and streams on other sites.

2.     Defendants changed the song name, author, and album title for each of the videos it claimed in a thinly veiled attempt to conceal its activities from plaintiff.  This allowed defendants the unfettered ability to convert all YouTube royalties, good-will, and secondary streams, licenses, and purchases that rightfully belonged to plaintiff, without the plaintiff's knowledge.

3.     Defendants' actions are shockingly egregious.  To date, the defendants have kept all of plaintiff's YouTube revenue, despite being served with the Complaint in this matter, and a formal demand.  This demonstrates defendants' intent to co-opt plaintiff's royalties.

4.     The alteration of the track name, author name, and album title constitutes false advertising, reverse passing off, and false designation of origin under Section 43(a) of the Lanham Act.  The intentional removal or alteration of the copyright management information ("CMI"), and distribution of plaintiff's recordings with false CMI constitutes hundreds of violations of 17 U.S.C. § 1202(a)(1) and (2), (b)(1), (2) and (3).

5.     Defendants' conversion of plaintiff's royalties, failure to pay the royalties back after notice, and changing of the album title, author, and song name, was clearly intentional.  At the very least defendants' conduct was, and is, (i) willful or wanton negligence, or (ii) involves a

conscious disregard of the plaintiff's rights, or (iii) conduct so reckless as to amount to such disregard.  Accordingly, only an award of punitive damages to plaintiff will adequately address defendants' conduct.

6.       Finally, defendant SOUNDFILE entered into a contract with plaintiff dated January 15, 2008 (the "Contract"), to affirmatively make placements in "television, dvd, Internet, and other distribution mediums."   Defendant SOUNDFILE was obligated to make monthly payments to plaintiff; but it didn't.  Defendant SOUNDFILE secured at least forty-two (42) placements of plaintiff's music, but plaintiff received only a single check for $550 in October 2010 (and that was before most of the placements were made).  Defendant SOUNDFILE breached the Contract and plaintiff has been injured.

7.       Plaintiff seeks damages based on: (i) defendants' intentional contributory copyright infringement, (ii) the hundreds of instances of a violation of 17 U.S.C. § 1202 ($2,500 - $25,000 per instance); (ii) conversion (actual and punitive damages); (iii) Section 43a of the Lanham Act (defendants' profit; any damages sustained by plaintiff; and the cost of the action), and (iv) compensatory damages based on defendants' breach of contract, money had and received, and for actual and punitive damages for defendants' intentional misrepresentation.

**JURISDICTION**

8.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1338(a) (jurisdiction over copyright actions).

9.       The Copyrighted Recordings were registered for copyright protection with the U.S. Copyright Office prior to the filing of this matter and satisfies the preregistration requirement as set forth in 17 U.S.C. § 411(a). See **Exhibit 1**.  All beneficial rights to the

Copyrighted Recordings have been assigned by the author to plaintiff and said assignment has been registered with the U.S. Copyright Office. See **Exhibit 2**.

10.     All of the Copyrighted Recordings were registered within three months of the contributory infringement entitling plaintiff to an election of statutory damages and attorneys' fees.

11.     This Court has *in personam* jurisdiction over the defendant SOUNDFILE because it has established contacts within this Judicial District sufficient to permit the exercise of personal jurisdiction.  Defendant SOUNDFILE contracted with plaintiff in this Judicial District sufficient to establish *in personam* jurisdiction.

12.     New York has the greatest interest in having its law govern the conversion, money had and received; intentional misrepresentation; and breach of contract claims against both defendants.

13.     New York has a strong interest in defining the scope of liability for licensors who work in the state.

14.     New York has the more significant interest in having its conduct-regulating law governing all orders that regulate behavior within its borders.

15.     Defendants falsely claimed ownership over the Copyrighted Recordings at issue, which has resulted in fraud-based claims that damaged plaintiff in this Judicial District.

16.     Defendants operate a library of BAIARDI's recordings which are used in television shows and movies viewed in this Judicial District.

17.     Defendants have additionally conducted business targeted at New York in the ordinary course of trade.

18.     CPLR § 302 (a)(3) authorizes this Court to exercise jurisdiction over nondomiciliaries who commit a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if it: (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

19.     Defendants concealed the infringements of others through its acts of changing the song name, album title, and author.  Defendants committed the acts of conversion and intentional misrepresentation knowing it would have an effect in this Judicial District.  These are intentional torts committed without the state, with an impact in New York.

20.     Defendants submitted the fraudulent information, through Identifyy, to YouTube, knowing the vast majority of plaintiff's fans who played the videos are in the New York area, which is where the impact of the intentional torts, including contributory infringement was felt.

21.     The copyright owner also resides in this Judicial District and the injury was further felt by it in this Judicial District.

22.     Defendant SOUNDFILE regularly conducts or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state.

23.     Defendant SOUNDFILE conducts significant and continuous business in New York such that there are no due process concerns, and this Court has jurisdiction over defendants.

24.     Based on defendants' intentional torts, and their knowledge the impact of these torts would be felt in this Judicial District, it does not violate any due process considerations to hale both defendants into a court in New York.

## VENUE

25.     Venue in this district is proper under 28 U.S.C. § 1391(b) and (c) and/or 28 U.S.C. § 1400(a).

26.     Plaintiff has the right to bring the within action pursuant to 17 U.S.C. § 501(b).

## PARTIES

27.     At all times material hereto, plaintiff Yesh Music, LLC ("YESH") was, and is, a limited liability company organized under the laws of the State of New York, with its principal offices located at 75-10 197th Street, Flushing, New York.  YESH is engaged in the business of music publishing and otherwise commercially exploiting its copyrighted sound recordings of the band The American Dollar.

28.     Upon information and belief, defendant Soundfile Productions, Inc. ("SOUNDFILE") was, and is, a corporation with a principal place of business located at 13636 Ventura Blvd. #104 Sherman Oaks, CA 91423.  Defendant BAIARDI is the sole owner of SOUNDFILE, and the corporation's sole function is to administer BAIRDI's recordings.

29.     Upon information and belief, defendant Michael Baiardi ("BAIARDI") was, and is, an individual and resident of California.

30.     Defendant BAIARDI is the sole owner of defendant SOUNDFILE.  BAIRARDI, at all times relevant to this Amended Complaint, through his operation and management of SOUNDFILE, maintained control, oversight, and direction over the operation of its facilities,

including the intentional torts of conversion, intentional misrepresentation, contributory

infringement, reverse passing off, and false advertising.

31.     At all times material hereto, BAIARDI participated in, assisted in, supervised,

guided and totally controlled SOUNDFILE in its decision making, financing and other affairs.

At all times relevant to this Amended Complaint, SOUNDFILE was the "alter ego" of BAIRADI

and dominated, controlled and supervised by BAIARDI to such a degree that it had no

independent ability to function.

## FACTS

32.     Plaintiff YESH was at all time relevant the assignee and sole beneficial owner of

all rights associated with the U.S. Copyright Registration identified in **Exhibit 1** (the

"Copyrighted Recordings").

33.     The assignment is attached as **Exhibit 2**.

34.     Plaintiff is comprised of two professional musicians from Queens.  The two

managing members of plaintiff are Richard Cupolo and John Emanuele, who are also the only

two members of the band "The American Dollar".  Messrs. Cupolo and Emanuele formed "The

American Dollar" shortly after graduating college.  Within three years, both Cupolo and

Emanuele were successful enough to earn a living solely from the revenue generated from their

recordings.

35.     Soon after making the transition to full-time musicians, it became apparent that

licensing was going to be the key to the bands' revenue generation.  Yesh Music, LLC was

formed to handle all of the licensing requests.  Cupolo and Emanuele formed YESH and then

assigned all of their rights to all recordings made under the "The American Dollar" name to Yesh

Music, LLC.

36.     As independent professional musicians, plaintiff relies on each stream of revenue for their livelihood.   By falsely claiming plaintiff's Copyrighted Recordings, and depriving plaintiff of a stream of revenue, defendant has put plaintiff's livelihood in jeopardy.

37.     Defendant SOUNDFILE is owned and operated by defendant BAIARDI, and is in the business, like YESH, of managing the self-composed library of defendant BAIARDI's recordings.

38.     Defendants falsely claims on their website that SOUNDFILE manages 55,000 recordings; that figure is a fraud.  Upon information and belief, defendant SOUNDFILE's library consists of only the 100-200 recordings of BAIARDI.

39.     BAIRDI used his dominion and control over SOUNDFILE to commit wrongdoings that sound in fraud, including plaintiff's claims of Conversion, and Intentional Misrepresentation.

## THE DMCA VIOLATIONS

40.     When copyrighted content, like a song, appears in a YouTube video, quite often that content is claimed and monetized by the content owner.  The content owner claims and monetizes their content through several Content ID systems available on YouTube.

41.     Not all of the Content Id systems, however, are available to everyone.

42.     The major labels (SONY, Warner, Universal, and BMG) have direct access to a Content ID system that enables them to disable infringing videos on YouTube without having to serve DMCA notices.  The major labels simply click on infringing uses and disable them. Alternatively, the major labels can elect to monetize the use.

43.     Unlike the major music labels, independent artists, like plaintiff, have no ability to stop the upload of third-party music-only videos or other videos containing infringing uses of their copyrighted content.  They must hire an intermediary to claim their content on YouTube.

44.     As per the YouTube guidelines, intermediaries are required to obtain an attestation from any individual or entity claiming any content that states the claiming party is the owner or has been granted the right by the owner to claim the content.

45.     The system available to independent artists, like the parties here, only allows monetization of videos.  Monetize means the collection of royalties for each full-play of the video, as well as revenue generated from advertisements served with the videos.

46.     The intermediaries upload the content to be claimed, and YouTube will scan every video in its vast library for matches.  Once a match is found, YouTube will automatically place the title of the recording, the author the entity claiming ownership beneath the video.

47.     All monetized videos are deemed licensed uses.

48.     Alternatively, independent artists, like BAIRDI or the members of plaintiff Richard Cupolo and John Emanuele, must serve DMCA notices on every unlicensed third-party upload (a nearly impossible feat).

49.     For every official licensed video an independent artist like plaintiff uploads to YouTube, there are scores of unlicensed infringing third-party uploads.  Serving DMCA notices on the hundreds, possibly thousands, of unlicensed third-party uploads is so time consuming, that it would require a full-time staff to find each video and serve the DMCA take-down notice.  This creates an underground market of infringing videos uploaded by unlicensed third-parties.

50.     When plaintiff releases a new single, the scores of uploads from unlicensed third-parties are generally "music-only videos".  Music-only videos consist of a picture of the single cover and synchronize plaintiff's track to just the single cover.

51.     Plaintiff allows certain third-party uploads on the express condition that beneath the video the uploader include the URL to plaintiff's website, the correct title of the recording, the name of the author, album title, and a link to iTunes.  Plaintiff attempts to locate and serve take-down notices for any third-party that does not comply.

52.     For a few days every quarter, plaintiff will contract with a company called Audium to monetize videos with its content.  This allows plaintiff to secure all revenue from YouTube and identify third-part infringers.  Regrettably, plaintiff has only had the time to serve take-down notices on a small percent on the non-complying third-party uploads.

53.     Plaintiff, and other artists, receive help from YouTube through its system of identifying all unclaimed recordings in its library and automatically populates the song name, author, and album title fields.

54.     It is vitally important, however, that every video on YouTube contain one of plaintiff's copyrighted Recordings is properly identified.  In fact, plaintiff relies heavily on the licensing, purchasing, streaming on other sites, as well as the revenue generated on YouTube from third-party uploads.

**DEFENDANTS' SCHEME**

55.     Sometime within the two years prior to the filing of the original Complaint in this matter, Defendants started using an intermediary called Identifyy d/b/a HAAWK to monetize all YouTube videos matching the Copyrighted Recordings.

56.     In its nefarious scheme, defendants submitted plaintiff's Copyrighted Recordings to Identifyy (Haawk) claiming it was the author and owner of the Copyrighted Recordings.

57.     Because defendant SOUNDFILE is owned by professional musician (defendant BAIARDI), Identifyy had no reason to doubt defendants' claims. See **Exhibit 3**.  Additionally, defendants would have been required by Identifyy to submit an attestation that they were the owner of the Copyrighted Recordings, or had permission from the content owner to claim the Copyrighted Recordings.

58.     Defendants had no license or authority to claim ownership to the Copyrighted Recordings. or collect revenue from YouTube.

59.     Once defendants claimed the Copyrighted Recordings, all videos, even those uploaded by plaintiff or licensed by plaintiff were claimed.  See <https://www.youtube.com/watch?v=e6sGByR46t4>.

60.     Defendants also claimed all of the videos licensed by plaintiff.

61.     Once claimed, YouTube would no longer automatically populate the song title, author, and album name fields.

62.     Defendants initially claimed each video through Identifyy (Haawk) in their own name.  Under each video it stated, "Licensed to YouTube by: Haawk for a 3rd Party (Soundfile Productions)".

63.     Defendants stopped directly claiming videos on YouTube through Identifyy (Haawk) and switched to anonymously claiming videos with the Copyrighted Recordings.  The claimed videos, which were the vast majority of videos, stated only: "Licensed to YouTube by: Haawk for a 3rd Party".

64.     Not only did defendants claim ownership of the Copyrighted recordings, it purported to license hundreds of infringing videos without authority.  Defendants concealed the fact that they were the entity claiming the revenue.

65.     Defendants directly claimed all videos containing at least fifty-three (53) of plaintiff's Copyrighted Recordings.  Those recordings, identified in **Exhibit 1**, are:

| Song Title | Claiming Party | Link |
|---|---|---|
| Circuits | Soundfile Publishing | https://www.youtube.com/watch?v=Xd6YyOZa1zk |
| A Few Words | Soundfile Productions | https://www.youtube.com/watch?v=0gPGord4hEI |
| As We Float | Soundfile Productions | https://www.youtube.com/watch?v=lRAm0LY4KT0 |
| Call | Soundfile Productions | https://www.youtube.com/watch?v=qKtEWHFuBGc |
| Circuits | Soundfile Productions | https://www.youtube.com/watch?v=Xd6YyOZa1zk |
| Clones | Soundfile Productions | https://www.youtube.com/watch?v=7J9lnzX6gYI |
| Crossing Asia | Soundfile Productions | https://www.youtube.com/watch?v=Ho7FLQJ30iY |
| Daytrip | Soundfile Productions | https://www.youtube.com/watch?v=zK6Z6oe1PUc |
| DEA | Soundfile Productions | https://www.youtube.com/watch?v=xw9WHBBXKbA |
| Escapist | Soundfile Productions | https://www.youtube.com/watch?v=Ohvb57gkmV0 |
| Ether Channels | Soundfile Productions | https://www.youtube.com/watch?v=W9glEbmBzJw |
| Everyone Gets Shot | Soundfile Productions | https://www.youtube.com/watch?v=gF59P3V0-v8 |
| Fade In Out | Soundfile Productions | https://www.youtube.com/watch?v=cAJKRqOPwN8 |
| First Day | Soundfile Productions | https://www.youtube.com/watch?v=6CZYlZpE-SQ |
| Flood | Soundfile Productions | https://www.youtube.com/watch?v=dEU3Qpb8tDA |
| Flood (Ambient) | Soundfile Productions | https://www.youtube.com/watch?v=1TydnIDlMvY |
| Friends of Friends | Soundfile Productions | https://www.youtube.com/watch?v=v5rl9DgmshA |
| Frontier Melt | Soundfile Productions | https://www.youtube.com/watch?v=CJhvS3Gn7os |
| Glow | Soundfile Productions | https://www.youtube.com/watch?v=O0azwYR5mVo |

| Heavy Eyes Ignite | Soundfile Productions | https://www.youtube.com/watch?v=puEiNIN11LI |
| Landing | Soundfile Productions | https://www.youtube.com/watch?v=NAKaZq6nj8I |
| Near East (Ambient) | Soundfile Productions | https://www.youtube.com/watch?v=Tuw4w5d6sjg |
| Oil and Water (Ambient) | Soundfile Productions | https://www.youtube.com/watch?v=4kffJgylel0 |
| Oracle | Soundfile Productions | https://www.youtube.com/watch?v=nQ-xiKmWkqg |
| Peterson | Soundfile Productions | https://www.youtube.com/watch?v=U_bCRVqH3M8 |
| Red Letter | Soundfile Productions | https://www.youtube.com/watch?v=FL6-Go5CF0Q |
| Rudiments Of A Spiritual Life | Soundfile Productions | https://www.youtube.com/watch?v=Ya_MhSUxJ6Q |
| Schipol | Soundfile Productions | https://w-ww.youtube.com/watch?v=ZDPoNmunNNU |
| Second Sight | Soundfile Productions | https://www.youtube.com/watch?v=EGN_uFZhmhE |
| Second Sight | Soundfile Productions | https://www.youtube.com/watch?v=0gPGord4hEI |
| Signaling Through The Flames | Soundfile Productions | https://www.youtube.com/watch?v=sGvDzMB1z5U |
| Signaling Through the Flames (Ambient) | Soundfile Productions | https://www.youtube.com/watch?v=KN6K43MtCIO |
| Somnambulance | Soundfile Productions | https://www.youtube.com/watch?v=dCSz9WxtOj8 |
| Starscapes | Soundfile Productions | https://www.youtube.com/watch?v=mVWaLzx2yK0 |
| Starscapes (Ambient) | Soundfile Productions | https://www.youtube.com/watch?v=TMr-_eLpNTE |
| Steeltown (Part One) | Soundfile Productions | https://www.youtube.com/watch?v=UH6vvr3SQLQ |
| Strings | Soundfile Productions | https://www.youtube.com/watch?v=LSnnlhjrEgs |
| Summer Of War | Soundfile Productions | https://www.youtube.com/watch?v=2Uis4dNp4U4&spf reload=1 |
| The Slow Wait (Part One) | Soundfile Productions | https://www.youtube.com/watch?v=R8iE5BiJdYM |
| The Slow Wait (Part Two) | Soundfile Productions | https://www.youtube.com/watch?v=p7DN2Rj7qt0 |
| The Swamp | Soundfile Productions | https://www.youtube.com/watch?v=1qdUhZBfhUk |
| Time | Soundfile Productions | https://www.youtube.com/watch?v=_k99RxvcqR0 |
| Tonight, Lets All Make Love In London | Soundfile Productions | https://www.youtube.com/watch?v=Qg8PitMpVNc |

| Twelve Days Awake | Soundfile Productions | https://www.youtube.com/watch?v=7O-fXKXEChc |
| Underground | Soundfile Productions | https://www.youtube.com/watch?v=-5Ar0K1Q7xk |
| Urbana | Soundfile Productions | https://www.youtube.com/watch?v=LRHiaMVcz5U |
| War on Christmas | Soundfile Productions | https://www.youtube.com/watch?v=P3U8rESlMrc |
| We're Hitting Everything | Soundfile Productions | https://www.youtube.com/watch?v=lekb7RSu_cE |
| We're Hitting Everything (Ambient) | Soundfile Productions | https://www.youtube.com/watch?v=UUJQItG6JQ8 |

66.     Videos with plaintiff's Copyrighted Recordings: Palestine, Flood, Near East, Oil and Water, and A Long Goodbye were only claimed anonymously by defendants.

67.     Defendants went even further; they claimed defendant SOUNDFILE was the author of plaintiff's Copyrighted Recordings.

68.     Defendants designated specific false album titles for plaintiff's copyrighted recordings like: (i) Ambient Mood Rock Soundtrack, (ii) Ambient Mood Drone, (iii) Emotional Rock, and (iv) Ambient Mood Drone, among others.

69.     Defendants also changed the title to each of the over fifty-three (53) Copyrighted Recordings to song titles chosen by defendants.

70.     This means any YouTube viewer that liked one of plaintiff's tracks, would look below the video and read false information about the artist, album, and even the song title. Plaintiff lost all good-will and potential new fans, and defendants gained all good-will and drove traffic to their website.

71.     The importance of this is incredible.  All revenue generated from YouTube royalties and advertisements went to defendants not plaintiff.  Further, any viewer wanting to license, purchase, or stream the recording in the future was directed to defendants instead of plaintiff.

72.     Again, defendants had no authority claim the Copyrighted Recordings or keep all revenue generated by the recordings.  Defendants were served with the Complaint in this matter on April 10, 2019, and another demand was made on May 17, 2019 for the return of the YouTube revenue.  Defendants have refuse to turn-over any of their ill-gotten gains.

73.     Defendants engaged in a scheme to falsify the CMI including the name of each recording, the author, and the album.  There are more than two hundred violations that plaintiff is aware of at this time.

74.     The fraudulent names of the songs, and albums used by defendants don't exist. Defendants created them solely for the purpose of its fraudulent scheme and contributory infringements.  For artist, defendants identified SOUNDFILE.

75.     Defendants intentionally altered or removed the metadata from the Copyrighted Recoding's.  Defendants' intentional removal or alteration of this copyright management information from the Copyrighted Recordings is a violation of 17 U.S.C. § 1202 and entitles plaintiff to up to $25,000 under 17 U.S.C. § 1203.

76.     Defendants received the actual CMI from plaintiff embedded in the naster-recording files.  Defendant BAIARDI deleted the embedded data it in favor of the false information in violation of 17 U.S.C. § 1201.

77.     Defendants distributed all of the Copyrighted Recordings claimed here along with the false CMI to Identifyy (Haawk).

78.     Plaintiff has been injured due to each violation, and there are hundreds, at minimum.  Plaintiff's full injury will be determined at trial, but plaintiff demands $25,000 per violation.

**EXAMPLES FROM YOUTUBE**

79.     Plaintiff has recorded over one hundred and ten videos that were claimed by defendants.  Plaintiff reviewed at least another one hundred videos.

80.     For example, the infringing video at https://www.youtube.com/watch?v=xA3GRLON6bY contains plaintiff's copyrighted recording Sonnombulance, from the self-titled album The American Dollar.  Defendants monetized it as:

| | |
|---|---|
| Song | Never Again_Full Mix |
| Artist | Soundfile Productions - NAAN |
| Album | SFP0080 Ambient Mood Rock Soundtrack |
| Licensed to YouTube by | HAAWK for a 3rd Party (on behalf of Soundfile Productions); HAAWK Publishing |

81.     As is apparent from the prior screenshot, nowhere does it state plaintiff's band name, the title of the track, or the album title.  It does, however, prominently, and completely falsely, state the Artist is defendant Soundfile Productions.

82.     The  infringing YouTube video found at https://www.youtube.com/watch?v=26qKGpHtp4w contains plaintiff's recording Twelve Days Awake.  The video, however, was monetized by defendants with the false CMI below:

| | |
|---|---|
| Song | Apartment In The City_Full Mix |
| Artist | Soundfile Productions - NAAN |
| Album | SFP0080 Ambient Mood Rock Soundtrack |
| Licensed to YouTube by | HAAWK for a 3rd Party (on behalf of Soundfile Productions); HAAWK Publishing, and 1 Music Rights Societies |

83.     As is apparent from the above, nowhere does it state plaintiff's band name, the title of the track, or the album title.  It does, however, prominently, and completely falsely, state the Artist is defendant Soundfile Productions.

84.     The infringing video located at https://www.youtube.com/watch?v=ajy_JSMactU contains plaintiff's copyrighted recording Twelve Day Awake, but was monetized by defendants as:

| Song | Apartment In The City_Full Mix |
| --- | --- |
| Artist | Soundfile Productions - NAAN |
| Album | SFP0080 Ambient Mood Rock Soundtrack |
| Licensed to YouTube by | HAAWK for a 3rd Party (on behalf of Soundfile Productions); HAAWK Publishing, and 1 Music Rights Societies |

85.     As is apparent from the prior screenshot, nowhere does it state plaintiff's band name, the title of the track, or the album title.  It does, however, prominently, and completely falsely, state the Artist is defendant Soundfile Productions.

86.     The infringing video found at https://www.youtube.com/watch?v=sshoZKF6aow contains plaintiff's Copyrighted Recording Twelve Days Awake.  Yet defendants monetized it with the below CMI:



87.     As is apparent from the screenshot on the prior page, nowhere does it state plaintiff's band name, the title of the track, or the album title.  It does, however, prominently, and completely falsely, state the Artist is defendant Soundfile Productions.

88.     The infringing video found at https://www.youtube.com/watch?v=U_bCRVqH3M8 contains plaintiff's copyrighted recording Signaling through the Flames, but was illegally labelled by defendants as:



89.     Again, nowhere does it state plaintiff's band name, the title of the track, or the album title.  It does, however, prominently, and completely falsely, state the Artist is defendant Soundfile Productions.

90.     The infringing video found at https://www.youtube.com/watch?v=0gPGord4hEI contains plaintiff's copyrighted recordings A Few Words, Rudiments of a Spiritual Life, and

Second Sight, but was illegally labelled by defendants as:



91.     Again, nowhere does it state plaintiff's band name, the title of the track, or the album title.  It does, however, prominently, and completely falsely, state the Artist is defendant Soundfile Productions.

92.     The infringing video found at

https://www.youtube.com/watch?v=nuYsBZUxux0contains plaintiff's copyrighted recordings Peterson, and Anything You Synthesize, but was illegally labelled by defendants as:



93.     Again, nowhere in the screenshot on the prior page does it state plaintiff's band name, the title of the track, or the album title.  It does, however, prominently, and completely falsely, state the Artist is defendant Soundfile Productions.

94.     The infringing  video found at https://www.youtube.com/watch?v=xA3GRL0N6bY contains plaintiff's copyrighted recording Signaling Through The Flames, but was illegally labelled by defendants as:



95.     Again, nowhere does it state plaintiff's band name, the title of the track, or the album title.  It does, however, prominently, and completely falsely, state the Artist is defendant Soundfile Productions.

96.     The infringing video found at https://www.youtube.com/watch?v=oxqUjXfLlqo contains plaintiff's copyrighted recording Signaling Through The flames, bur was illegally

labelled by defendants as:



97.     Again, nowhere does it state plaintiff's band name, the title of the track, or the album title.  It does, however, prominently, and completely falsely, state the Artist is defendant Soundfile Productions.

98.     The infringing video found at https://www.youtube.com/watch?v=vwrboH8X3pc contains plaintiff's copyrighted recording DEA, bur was illegally labelled by defendants as:



99.     Again, nowhere does it state plaintiff's band name, the title of the tracks, or the album titles.  It does, however, prominently, and completely falsely, state the Artist is defendant Soundfile Productions.

100.    The infringing video found at

https://www.youtube.com/watch?v=KN6K43MtCIO contains plaintiff's copyrighted recording

Signaling Through The Flames (Ambient) but was illegally labelled by defendants as:



101.    Again, nowhere does it state plaintiff's band name, the title of the track, or the

album title.  It does, however, prominently, and completely falsely, state the Artist is defendant

Soundfile Productions.

102.    The infringing video found at https://www.youtube.com/watch?v=Tuw4w5d6sjg

contains plaintiff's copyrighted recording Near East (Ambient) but was illegally labelled by

defendants as:



103.    Again, nowhere does it state plaintiff's band name, the title of the track, or the

album title.  It does, however, prominently, and completely falsely, state the Artist is defendant

Soundfile Productions.

104.    The infringing video found at https://www.youtube.com/watch?v=1TydnIDlMvY
contains plaintiff's copyrighted recording Flood (Ambient) but was illegally labelled by
defendants as:



105.    Again, it prominently, and completely falsely, states the Artist is defendant
Soundfile Productions.

106.    The video found at https://www.youtube.com/watch?v=1TydnIDlMvY
contains plaintiff's copyrighted recording Flood (Ambient)  but was illegally labelled by
defendants as:



107.    Again, it prominently, and completely falsely, states the Artist is defendant Soundfile Productions.

108.    The infringing video found at https://www.youtube.com/watch?v=PUUxwGFNKUE contains plaintiff's copyrighted recording Flood (Ambient)  but was illegally labelled by defendants as:



109.    Again, nowhere does it state plaintiff's band name, the title of the track, or the album title.  It does, however, prominently, and completely falsely, state the Artist is defendant Soundfile Productions.

110.    The infringing video found at https://www.youtube.com/watch?v=3N2HlP_LyZE

contains plaintiff's copyrighted recording Flood (Ambient) but was illegally labelled by

defendants as:



111.    Again, nowhere does it state plaintiff's band name, the title of the track, or the

album title.  It does, however, prominently, and completely falsely, state the Artist is defendant

Soundfile Productions.

112.    The infringing video found at

https://www.youtube.com/watch?v=PUUxwGFNKUE contains plaintiff's copyrighted recording

Flood (Ambient) but was illegally labelled by defendants as:



113.    Again, nowhere does it state plaintiff's band name, the title of the track, or the

album title.  It does, however, prominently, and completely falsely, state the Artist is defendant

Soundfile Productions.

114.    The infringing video found at https://www.youtube.com/watch?v=4kffJgyleI0

contains plaintiff's copyrighted recording Oil and Water (Ambient) but was illegally labelled by

defendants as



115.    Again, nowhere does it state plaintiff's band name, the title of the track, or the

album title.  It does, however, prominently, and completely falsely, state the Artist is defendant

Soundfile Productions.

116.     The infringing video found at https://www.youtube.com/watch?v=e6m5vG5q36E

contains plaintiff's copyrighted recording Near East (Ambient) but was illegally labelled by

defendants as:



117.     Again, nowhere does it state plaintiff's band name, the title of the track, or the

album title.  It does, however, prominently, and completely falsely, state the Artist is defendant

Soundfile Productions.

118.     The infringing video found at https://www.youtube.com/watch?v=CCCecaBBoh0

contains plaintiff's copyrighted recording Shadows (Ambient) but was illegally labelled as:



119.     Again, nowhere does it state plaintiff's band name, the title of the track, or the album title.  It does, however, prominently, and completely falsely, state the Artist is defendant Soundfile Productions.

120.     The infringing video found at https://www.youtube.com/watch?v=o8zs-n9hFwk contains plaintiff's copyrighted recording Daytrip but was illegally labelled by defendants as:



121.     Again, nowhere does it state plaintiff's band name, the title of the track, or the album title.  It does, however, prominently, and completely falsely, state the Artist is defendant Soundfile Productions.

122.     The infringing video found at https://www.youtube.com/watch?v=vwrboH8X3pc contains plaintiff's copyrighted recording Twelve Days Awake but was illegally labelled as:



30

123.     Again, nowhere does it state plaintiff's band name, the title of the track, or the album title.  It does, however, prominently, and completely falsely, state the Artist is defendant Soundfile Productions.

124.     The infringing video found at https://www.youtube.com/watch?v=zyV0lhMDuig contains plaintiff's copyrighted recording Twelve Days Awake but was illegally labelled as:



125.     Again, nowhere does it state plaintiff's band name, the title of the track, or the album title.  It does, however, prominently, and completely falsely, state the Artist is defendant Soundfile Productions.

126.  The infringing video found at

https://www.youtube.com/watch?v=U_bCRVqH3M8 contains plaintiff's copyrighted recording

DEA, bur was illegally labelled by defendants as:



127.    Again, nowhere does it state plaintiff's band name, the title of the track, or the

album title.  It does, however, prominently, and completely falsely, state the Artist is defendant

Soundfile Productions.

128.    The video found at https://www.youtube.com/watch?v=OrbovhghoGk contains

plaintiff's copyrighted recording Age of Wonder (Ambient), but was illegally labelled as:



129.   Again, nowhere does it state plaintiff's band name, the title of the track, or the album title.  It does, however, prominently, and completely falsely, state the Artist is defendant Soundfile Productions.

130.   There are hundreds of other videos claimed by defendant.  Most of the videos are claimed with the anonymous "Haawk for a 3rd Party".

## DEFENDANTS PROMINENTLY DISPLAYED
## THE CORRECT INFO ON THE VIDEOS IT POSTS

131.   Defendants don't engage in this clandestine scheme for the videos they post on YouTube for other artists.

132.   For example, the below is a video posted by defendants to the SOUNDFILE YouTube channel.



133.   As is evidenced from the above, when defendants uploads a video to YouTube, it provides every possible piece of correct identifying information.

134.    Below is another screenshot of a video uploaded by defendants.



135.    Again, as is evidenced from the screenshot on the prior page, when defendants upload a video, it provides every possible piece of correct identifying information.

136.    Defendants even provided a link to iTunes to purchase the recording.

137.    Defendants identified the album, artist, and song title, which is obviously very important to defendants and its clients.

### DEFENDANTS HAD NO AUTHORITY TO CLAIM PLAINTIFF'S COPYRIGHTED RECORDINGS

138.    Defendants induced the Contract after making material misrepresentations that it controlled a vast library of recordings and artists.

139.    Nothing in the Contract, however, allowed defendants to claim plaintiff's Copyrighted Recordings on YouTube.  In fact, defendants were expressly granted the right to "secure placements" only. See **Exhibit 6**.

140.    Securing placements is the business of licensors, and it means defendants will affirmatively market and seek licensing opportunities.

141.    Claiming videos on YouTube can't possibly be considered "securing placements". Defendants even claimed videos uploaded by plaintiff and videos licensed directly by plaintiff.

142.    Identifyy (Haawk), the intermediary used by defendants to execute its scheme, stated defendants represent only the catalogue of defendant BAIARDI.  Identifyy expressly stated it was unaware of any other artists which defendants acts a licensor. See **Exhibits 3 and 4**.

143.    Defendant SOUNDFILE's business is a sham, and defendants kept nearly 100% of all licensing money, and it used its position of trust to surreptitiously, and illegally, secure all revenue generated from YouTube for plaintiff's Copyrighted Recordings.

144.    BAIARDI made all decisions on these matters.  BAIARDI created this scheme of fake names, and he falsely claimed ownership of the Copyrighted Recordings, and took possession of all revenue generated.  BAIARDI refused to give back the purloined revenue after demands were made.

145.    BAIARDI is responsible for keeping substantially all of the revenue generated from the known placements of the Copyrighted Recordings on Teen Mom, 16 and Pregnant, and one pilot.  BAIRDI represented to Identifyy (Haawk) that it was the author of the Copyrighted Recordings and signed the attestation to that fact.

**REVERSE PASSING OFF/ FALSE ADVERTISING /
FALSE DESIGNATION OF ORIGIN**

146.    Defendants admitted to the fact that they submitted false information to YouTube misidentifying plaintiff's Copyrighted Recordings.

147.    The identification of the song name, album title, and artist on YouTube is a promotion or commercial advertising as contemplated 1125(a).

148.    Plaintiff has quite apparently been damaged by the false descriptions or representations.  Plaintiff has, at the very least, lost the revenue generated by the videos.

149.    Defendants represented they generated $6,284 by their illegal claiming scheme is $6,284.  At no time did the defendants inform plaintiff of its scheme or give the plaintiff the revenue generated.

150.    While the claiming scheme is not remotely covered by the Contract, if we assume, arguendo, that it was, defendants were obligated then to give plaintiff 50% of all revenue generated from the placements it secured.  Yet defendants hid this revenue from plaintiff.

151.    Plaintiff also lost the revenue generated from the good-will, and YouTube viewers seeking to stream, license, or purchase each Copyrighted Recording.

152.    Defendants' concealment of the identifying information made it impossible for plaintiff to identify the numerous infringing videos on YouTube.  It was the perfect crime.

153.    By stating defendant SOUNDFILE was the author, defendants were attempting to falsely designate the origin of the Copyrighted Recordings.

## CONVERSION

154.    Defendants engaged in a scheme to steal plaintiff's YouTube revenue.

155.    Defendants attempted to cover its theft of YouTube revenue by changing the song name, album name, and author.  This made it impossible to search for infringing uses of the Copyrighted Recordings on YouTube.

156.    It was only after significant due diligence, consisting of hundreds of hours of attorney/paralegal time, that plaintiff was able to unravel the scheme.

157.    Defendants illegally collected the proceeds of its scheme, without ever informing plaintiff it was collecting its YouTube revenue.

158.    Defendants claim they collected $6,284 in revenue rightfully due to plaintiff.

159.    Even after defendants were served with the Complaint in this matter, and a formal demand, defendants still refuse to tender back the stolen YouTube revenue.

160.    The conduct by defendants here is so egregious that it shocks the conscious.

161.    Only by an award of punitive damages will the defendants be taught this conduct is not acceptable in our society.

## BREACH OF CONTRACT

162.    Plaintiff and defendant SOUNDFILE entered into an Agreement in 2010 which provides that defendant SOUNDFILE (through BAIARDI) would secure placements and split the revenue generated from those placements with plaintiff 50/50. See **Exhibit 6**.

163.    Defendant SOUNDFILE did secure the placement of at least forty-two (42) Copyrighted Recordings.  Defendant SOUNDFILE secured one pilot television program, and numerous placements on the television programs 16 and Pregnant and teen Mom. See **Exhibit 5**.

164.    At no time did defendants inform plaintiff of all the placements.  Instead, plaintiff obtained that information by hiring a company to investigate.

165.    Defendants stated that it had an overall deal with the television shows Teen Mom and 16 and Pregnant, and plaintiff would receive $200 per track placed in the two programs. See **Exhibit 7.**

166.    There were forty-one (41) placements on those programs, and even under defendants' low-ball rate, plaintiff is owed at least $8,400.

167.    Plaintiff received only a single check in October 2010 for $550.   Thirty-six of the placements which plaintiff is aware of, were secured in or after October 2010.

168.    Defendants claimed it sent a check for Q1/Q2 of 2011 – no check was ever received. See **Exhibit 8**.

169.    Defendants ignored its obligation to plaintiff, and when an accounting was demanded, defendants refused.

170.    Defendants materially breached its primary obligation to plaintiff and failed to turn over the vast amount of revenue generated from the placements secured by defendants.

171.    The Contract did not allow defendants to monetize plaintiff's recordings on YouTube or change the title of the recordings, the artist, or the album title on YouTube.

172.    Plaintiff has been injured in an amount to be determined at trial.

## FIRST CLAIM FOR RELIEF
## CONTRIBUTORY INFRINGEMENT

173.    Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth here at length here.

174.    It cannot be disputed that the plaintiff has a valid, registered copyright, and owns all rights to the Recordings.

175.    Defendants, without authority from plaintiff, materially contributed to the infringement of at least fifty-three (53) copyrighted recordings, used in hundreds of infringing videos on YouTube.  By concealing the title of the Copyrighted Recording, the artist, and the name of the album on each infringement, defendants made it nearly impossible for plaintiff to identify the infringing videos claimed by defendant.  Plaintiff expects that there are more copyrighted recordings claimed by defendants which will be identified later.

176.    By falsifying the claiming information, defendants materially contribution to the infringement.

177.    Defendants were aware that the vast majority of videos it claimed were un-licensed.

178.    It benefited defendants greatly to conceal the infringements of the Copyrighted Recordings on YouTube.  The more infringing third-party uploads of the Copyrighted Recordings -- the more royalty revenue generated for defendants.

179.    Defendants took all of its ill-gotten revenue and hid the revenue and infringements from plaintiff.

180.    Defendants' contributory infringement was intentional, or with reckless disregard to plaintiff's exclusive right.  Pursuant to Section 504(c) of the Act, plaintiff is entitled to enhanced damages.

181.    Defendant BAIARDI was responsible for all decisions regarding defendants' intentional contributory infringements.

182.    Defendants' acts were not for criticism, comment, news reporting, teaching, scholarship, or research.

183.    Defendants' acts were not transformative.

184.    Defendants' acts were not covered by the Contract.

185.    Defendants claimed licensed uses, and videos uploaded by plaintiff.  There is no possibility theses videos would be considered placements secured by defendants.

186.    Defendants continued their acts of contributory infringement after notice.

187.    As a direct and proximate result of defendants' infringement, plaintiff has incurred damages, and requests an award of defendants' profits, and plaintiff's loss, plus costs, interest, and attorneys' fees.  Plaintiff may also elect to recover statutory damages pursuant to 17

U.S.C. § 504(c)(2) for willful infringement of up to $150,000, but not less than $30,000 against each defendant.

## SECOND CLAIM FOR RELIEF
## VIOLATIONS OF THE DMCA

188.    Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth at length here.

189.    Defendants received from plaintiff the master recordings to the fifty-three (53) Copyrighted Recordings at issue, along with the title, artist name, and album name of each recording.

190.    Defendants removed the CMI and put falsified CMI for each Copyrighted Recording.  The misattribution is further evidence of defendants' violation of the DMCA.

191.    Defendants violated the DMCA each time it wrongfully misidentified a Copyrighted Recording.

192.    There are over two hundred violations of 15 U.S.C. § 1202(1) and (2) committed by defendants.

193.    Defendants also violated section 1202 by abstracting or removing and/or altering the CMI.

194.    Defendants removed the protective CMI with the intent to conceal the infringement.

195.    Section 1202 of the DMCA provides, in part: "(a) no person shall knowingly and with the intent to induce, enable, facilitate or conceal infringement - (1) provide copyright information that is false.

196.    Defendants concealed, enabled, and facilitated the infringement of plaintiff's Copyrighted Recordings by intentionally mislabeling the identity of the author, album title, and song name for each of the hundreds of videos containing the Copyrighted Recordings.

197.    The upload by third-parties of infringing videos to YouTube was in defendants' best interest.  Once defendants mislabeled the videos, it made them almost impossible for plaintiff to locate.

198.    Defendants have violated § 1202(a)(1) by their acts and omissions for each video.

199.    Defendants also distributed or imported for distribution CMI that is false.  This is a violation of § 1202(a)(2).

200.    Defendants removed or altered the CMI without the authority of the copyright owner or the law.

201.    Defendants intentionally removed or altered the CMI on hundreds of videos in violation of § 1202(b)(1).

202.    Defendants distributed or imported for distribution CMI knowing that the copyright management information had been removed or altered without authority of the copyright owner or the law in violation on § 1202(b)(2).

203.    Defendants distributed or imported for distribution, copies of the Copyrighted Recordings, knowing that the CMI had been removed or altered without authority of the copyright owner or the law.  Each instance of this is a violation of § 1202(b)(3).

204.    The statute defines CMI as: "any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form . . . (1) The title and other information identifying the work, including the information set forth on a notice of copyright. (2) The name of, and other identifying

information about, the author of a work. (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright. (4) With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work. (5) With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work. (6) Terms and conditions for use of the work.  (7) Identifying numbers or symbols referring to such information or links to such information. (8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work."

205.    Plaintiff elects to recover an award of statutory damages for each violation of section 1202 in the sum of up to $25,000 per violation, but in no case less than $2,500 per violation, plus the reasonable costs and attorneys' fees incurred by plaintiff in this action.

**THIRD CLAIM FOR RELIEF**
**FALSE ADVERTISING – 15 U.S.C. §1125(a); 43(a)**
**REVERSE PASSING OFF**

206.    Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth here at length here.

207.    A false statement in a label has been held to constitute false advertising under the Lanham Act.

208.    Defendants' mislabeling here was undertaken for the purposes of trade within the meaning of the Statute.

209.    BAIARDI made the decision to mislabel the YouTube videos.

210.    Plaintiff has a reasonable interest to be protected against the alleged false advertising here, namely the interest in the revenue generated from YouTube, and the second-tier revenue of generated from streaming, or purchase on other services, and licensing.

211.    Instead of customers being directed to plaintiff, they were directed to defendants.

212.    Plaintiff has a reasonable basis for believing that its interest is likely to be damaged by defendants' false advertising.  In fact, plaintiff need only point to the $6,284 in revenue which went directly to defendants.

213.    The statements made by defendants are literally false.

214.    The product at issue here, namely the Copyrighted Recordings, originated with the plaintiff.

215.    Defendants falsely designated the origin of the Copyrighted Recordings.

216.    Defendants' false designation of origin has caused consumer confusion.

217.    Plaintiff, as the originator of the Copyrighted Recordings, was involuntarily deprived of the advertising value, the goodwill, and the follow-up streams, purchases and license opportunities that otherwise would stem from public knowledge of the true source of the Copyrighted Recordings.

218.    Plaintiff has been injured in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**
**FALSE ADVERTISING – 15 U.S.C. §1125(a); 43(a)**
**FALSE ADVERTISING/PASSING OFF**

219.    Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth here at length here.

220.    The statements made by the defendants were literally false.

221.    The false or misleading statements were certainly material.

222.    In fact, defendants have admitted they submitted false information misidentifying plaintiff's Copyrighted Recordings.

223.    The identification of the song name, album title, and artist on YouTube is a promotion or commercial advertising as contemplated 1125(a).

224.    Plaintiff has been damaged in the form of lost royalties, lost good-will, and lost follow up streams, purchases, and licenses.

225.    Defendants have represented the revenue illegally generated from YouTube is $6,284.

226.    This concealment of the identifying information made it impossible to identify the numerous infringing videos.

227.    Interstate commerce is affected.  The videos falsely claimed by defendants have been viewed hundreds of thousands of times on YouTube by viewers throughout the United States.

228.    The defendants used a false designation of origin or a false description or representation with respect to those goods or services.

229.    Plaintiff has been injured in an amount to be determined at trial.

**FIFTH CLAIM FOR RELIEF**
**CONVERSION**

230.    Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth here at length here.

231.    Defendants' conduct took place sometime in the two years prior to the date the original Complaint in this matter was filed.

232.    Defendants acted at all times without authorization from plaintiff.

44

233.    As described above, defendants exercised dominion or right of ownership over property belonging to the plaintiff; namely the Copyrighted Recordings and the resultant revenue and good-will.

234.    A demand was made for the return of the YouTube revenue, but none have been returned to date.

235.    This involves wrongs that are separate and distinct from any contractual obligation.

236.    Defendants have a relationship with the public in general.

237.    Defendants' conversion of the Copyrighted Recordings and collection of revenue was so outrageous and repugnant to the rights of plaintiff and of the public with which defendants deal, that punitive damages are warranted.

## SIXTH CLAIM FOR RELIEF
## MONEY HAD AND RECEIVED

238.    Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth here at length here.

239.    Defendants received money belonging to plaintiff; namely revenue from YouTube.

240.    Defendants benefitted from the receipt of this revenue.

241.    Under principles of equity and good conscience, defendants should not be permitted to keep this revenue.

## SEVENTH CLAIM FOR RELIEF
## INTENTIONAL MISREPRESENTATION

242.    Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth here at length here.

243.    Defendants represented it possessed unique or specialized expertise in licensing.

244.     In fact, defendants represented they was in charge of a library of over 50,000 tracks.

245.     Because defendant SOUNDFILE is owned by a recognized professional musician (defendant BAIARDI), it gave rise to a special relationship of trust or confidence between the parties.

246.     Based on this, plaintiff entered into the Contract and turned over its master-recordings in reliance on defendants' representation that they would be used solely in the context of securing commercial placements.

247.     Defendants then stole plaintiff's master recordings and turned them over to Identifyy (Haawk) as their own.  Because plaintiff is a professional musician, Identifyy had no reason to question defendant's misrepresentation.

248.     At all times relevant to this Amended Complaint, defendant was aware that it's misrepresentations would be used for a particular purpose; namely, illegally securing revenue and good will that rightfully belonged to plaintiff.

249.     Both Identifyy and YouTube relied on defendants' misrepresentations.

250.     Defendants then collected revenue rightfully belonging to plaintiff, while simultaneously hiding its misrepresentations by using fake album names, authors, and album titles.

251.     BAIARDI was singularly responsible for all misrepresentations.

252.     Plaintiff has been injured in an amount to be determined at trial, plus exemplary damages, and pre-post trial interest.

## EIGTH CLAIM FOR RELIEF
## BREACH OF CONTRACT

253.    Plaintiff incorporates the allegations contained in the preceding paragraphs as if set forth at length here.

254.    Plaintiff and defendant SOUNDFILE entered into a contract whereby defendant would "secure placements" and split the fees generated 50/50.

255.    There has been at least fort-two (42) placements.  Defendant SOUNDFILE represented plaintiff would receive at least $200 per placement.  Industry standard, however, is between $750 and $3,000 for non-network placements.

256.    Even under defendant's low-ball number, the forty-two (42) known placements has resulted in at least $8,400 in fees owed to plaintiff.

257.    Plaintiff received one single payment for $550 in October 2010.

258.    Only six (6) of the forty-two (42) placements were done prior to October 2010.

259.    This is a material breach of the agreement.

260.    Plaintiff is owed at least $7,850 on defendants' low-ball representation.

261.    Plaintiff seeks the industry for placements, based on proof.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against defendants, jointly and severably, and awarding plaintiff as follows:

1   restitution of defendants' unlawful proceeds;

2   compensatory damages in an amount to be ascertained at trial;

3   damages under the DMCA of $25.000 per instance plus reasonable attorneys' fees;

4   statutory damages to plaintiff according to proof, including but not limited to all penalties authorized by the Copyright Act (17 U.S.C. §§ 504(c)(1), 504(c)(2));

5    punitive damages;

6    reasonable attorneys' fees and costs (17 U.S.C. § 505);

7    pre- and post-judgment interest to the extent allowable;

8    such other and further relief that the Court may deem just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: May 17, 2019                   GARBARINI FITZGERALD P.C.
New York, New York

By: _Richard M. Garbarini_____

Richard M. Garbarini (RG 5496)